[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
At a hearing scheduled to hear the plaintiff's application for a prejudgment attachment of assets of the defendant Greater Bridgeport Individual Practice Association, Inc., ("GBIPA"), the parties each filed a motion to disqualify opposing counsel. This court conducted an evidentiary hearing over the course of two days on the motions to disqualify counsel.
I. Plaintiff's Motion to Disqualify
The plaintiff, Nancy Watters, has moved to disqualify the firm of Updike, Kelly Spellacy from representing the defendants in defense of her claims. Those claims are that the GBIPA breached a contract with her when it terminated her employment as president and chief executive officer of the GBIPA, on January CT Page 5496 14, 1998, and that defendant Lee defamed her at a meeting of GBIPA's board of directors. The plaintiff alleges that the Updike firm had represented her as a defendant in litigation in which the GBIPA was a co-defendant, that she had conveyed confidential information to members of that firm because they were representing her, and that this information can be used against her in this case. She further alleges that at least one and possibly two of the Updike lawyers are persons whom the defendants would naturally call as witnesses in this case. The plaintiff asserts that Rule 3.7 of the Rules of Professional Conduct requires the disqualification of the Updike firm.
There is no doubt that Attorney David Sturgess is likely to be a substantive witness at trial. The GBIPA consists of a board of directors, all or most of whom are practicing physicians, the plaintiff, and two office staff. Atty. Sturgess not only advised the board on legal matters but also worked with the plaintiff on the day-to-day operations of the organization. He drafted and explained to the plaintiff the employment agreement at issue in the first count of the complaint, and he had an opportunity to observe the plaintiff's job performance over the whole term of her employment. The only other witnesses with substantial familiarity with the plaintiff's performance are Dr. Joshua Twersky, the chairman of the board until December 1997, and Dr. Michael Lee, the chairman after December 1997. The former witness is an ally of the plaintiff and has grievances of his own against the board of directors; the latter has had limited contact with the plaintiff and may be of limited utility as a witness at trial because he had personality and emotional clashes with her that may considerably color the trier's view of his testimony. Accordingly, Atty. Sturgess is very likely to be a crucial witness.
The defendants observe that a different member of the Updike firm, Richard Order, will be trial counsel, not Atty. Sturgess.
Rule 3.7 of the Rules of Professional Conduct provides that a lawyer "may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." The plaintiff asserts that Atty. Order is precluded from acting as trial counsel by operation of Rule 1.9. That rule forbids an attorney who has formerly represented a client in a matter from thereafter representing another person in "the same or a substantially related matter in which that person's interests are materially CT Page 5497 adverse to the interests of the former client unless the former client consents after consultation."
This court does not find that Atty. Sturgess was representing Ms. Watters at the time he presented to her a proposed employment agreement on behalf of GBIPA, her employer, and he did not represent her at any other time.
Atty. Order represented Ms. Watters when she was sued as a co-defendant with the GBIPA. In that complaint, Ex. I, the plaintiff alleged that Watters had breached her fiduciary duties by acting in a way that benefitted [benefited] her own contractual entitlements in relation to GBIPA rather than acting as a fiduciary toward the plaintiff. Watters was deposed in that lawsuit. She testified that in the course of the discussing the deposition after it was over, she confided in Atty. Order about a prior health condition by way of explaining her lack of precision on certain details.
Ms. Watters did not contradict Atty. Order's testimony that he had been aware of the health issue at the time she was experiencing it because she had mentioned it to him in the course of conducting the Association's business, prior to the time that he appeared as her attorney in the case against the association.
Soon after her deposition, Ms. Watters and GBIPA agreed that she should have separate counsel; and Atty. Christopher Rooney was retained to represent her as a co-defendant in that case.
The central issue is whether Atty. Order's initial representation of Ms. Watters in Russo v. Greater BridgeportIndividual Practice Association, Inc., was "a substantially related" matter within the meaning of Rule 1.9. The subject matter of that suit was the reimbursement rate for radiologists, not an issue related to Ms. Watters' employment. Ms. Watters' reference to a past health condition did not create a substantial relation between Atty. Order's representation of Watters in Russo and her present employment dispute. The evidence indicates that Atty. Order and his colleagues who had been working closely with the plaintiff on association business had an opportunity to observe the consequences of her health problems that was independent of any attorney-client relationship before the Updike firm undertook to represent Watters in the case against her and the GBIPA. The repetition of non-confidential information during a period of representation does not transform that information into confidential information. CT Page 5498
There is no indication that the health problem or its sequelae will be relied on as a justification for the defendants' failure to continue to employ the plaintiff for the period specified in employment agreement.
Defendant GBIPA is entitled to be represented by counsel of its choice unless such representation would violate an applicable ethical constraint. The Rules of Professional Conduct allow one lawyer in a firm to represent a client even if another lawyer in the same firm is likely to be call as a witness, so long as the trial lawyer is not disqualified by reason of a conflict of interest. Applying the weighing of interests set forth in Bergeron v.Mackler, 225 Conn. 391, 397-98 (1993), this court finds that disqualification is not warranted. The court will hold the defendant's counsel to its representation, made at pages 5 and 6 of its brief, that nothing was learned about Ms. Watters in the course of representation in Russo that will be used in any way in this suit.
II. Defendants' Motion to Disqualify
The defendants have moved to disqualify plaintiff's counsel, Christopher Rooney, and the law firm of Carmody Torrance on the ground that Atty. Rooney engaged in an ex parte communication with a member of GBIPA's board of directors concerning the plaintiff's claim against GBIPA. The defendants invoke Rule 4.2 of the Rules of Professional Conduct. That rule provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."
In the second count of her complaint, the plaintiff alleges that Dr. Michael Lee made "frequent and constant derogatory and untrue statements about Nancy Watters to the Board of Directors and employees of GBIPA . . ." and that Dr. Lee made a "personal attack on the plaintiff" at "two Board of Director meetings that were held in January 1998." The plaintiff alleges that Dr. Lee's statements at the two January board meetings injured her reputation and caused her to lose her job.
The plaintiff was not present during the board's discussion of her at any January board meeting. The defendants have surmised that the source of the plaintiff's information about what Dr. Lee CT Page 5499 said at those meetings was information solicited by plaintiff's counsel from Dr. Joshua Twersky, who had been replaced as president of the board in an election in December 1997. Atty. Sturgess testified that he was present at the January board meeting at which termination of Ms. Watters' employment was discussed by the board. Atty. Sturgess testified that Dr. Twersky left the January 13, 1998 meeting before that discussion began. As of the date of the hearing, Dr. Twersky had not formally resigned as a member of the board of directors. On January 15, 1998 he engaged Atty. Rooney, who already represented Ms. Watters, to represent him in a dispute with GBIPA concerning his remuneration as chairman. No testimony was presented to establish that there was a second January meeting at which Dr. Twersky was present while Dr. Lee commented on Ms. Watters.
Though Dr. Twersky and Ms. Watters have both retained Atty. Rooney and his law firm to represent them with regard to their disputes with GBIPA, the fact that they are represented by the same counsel does not alone constitute a violation of Rule 4.2. While the defendants may suspect that a lawyer will ask one client for information that aids the cause of another client, the court finds that this supposition is not supported by the evidence. The disputes of the two clients are not related, nor would evidence concerning each client's claim be relevant to the claims of the other. Both Atty. Rooney and Dr. Twersky denied that they had communicated with regard to Ms. Watters' claims against GBIPA. The credibility of their denials is enhanced by the fact that Dr. Twersky was not even present at the January meeting at which the plaintiff's employment was discussed. Anyone at that meeting might have mentioned Dr. Lee's alleged comments to the plaintiff, or she may have pleaded them on the inference that Dr. Lee said the same things in board meetings that he had said in other settings.
The court's in camera inspection of Atty. Rooney's file concerning his representation of Dr. Twersky did not indicate any communication concerning Ms. Watters' claims.
The commentary to Rule 4.2 notes that "parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so." The plaintiff, who was contemplating legal action to redress perceived wrongs, had every motivation to question others about the reasons for her termination discussed at the board meeting. There is no indication that she engaged in any such inquiry as the agent of or at the direction of her CT Page 5500 attorney rather than on her own behalf. Atty. Rooney's instructions to Dr. Twersky concerning his subpoena and nonsubstantive conversation during a court recess were not communications "about the subject of the representation" within the scope of Rule 4.2.
The defendant have not established a reason to disqualify Atty. Rooney or Carmody Torrance from representing the plaintiff.
Conclusion
For the foregoing reasons, both motions to disqualify counsel are denied.
BEVERLY J. HODGSON JUDGE OF THE SUPERIOR COURT